**In re Anonymous No. 46 D.B. 73**

Discplinary Board Docket no. 46 D.B. 73.

HAMMERMAN, *Board Member,* September 24, 1979—Pursuant to Pa.R.D.E. 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and rec-

ommendations to your honorable court with respect to the above petition for reinstatement.

## 1. HISTORY OF PROCEEDINGS

On September 19, 1978 a petition for reinstatement was filed by petitioner. Said petition recited, inter alia, that on October 14, 1977 pursuant to the provisions of Pa.R.D.E. 301(a) your honorable court issued an order at No. 161, Disciplinary Docket No. 1 that the name of [respondent] be placed on the inactive roll of attorneys, due to the order of the Court of Common Pleas of [ ] involuntarily committing petitioner to [ ] State Hospital under section 304 of the Mental Health Procedures Act of July 9, 1976, P.L. 817, as amended 50 P.S. §7304.

Thereafter, pursuant to the provisions of Pa.R.D.E. 218(2) the board on September 19, 1978 referred the petition to hearing committee [ ].

Following appropriate notice, a hearing was held before the hearing committee on Monday, December 18, 1978 in [ ] office of the Disciplinary Board, Supreme Court of Pennsylvania.

On July 5, 1979 the Hearing Committee filed its report and recommendation with the secretary of the board recommending that petitioner be reinstated. The secretary served copies upon counsel for the petitioner and assistant disciplinary counsel on July 5, 1979, together with notice of their right to file exceptions. No exceptions to the report of hearing committee [ ] have been filed by either petitioner or respondent within the prescribed times.

## 2. DISCUSSION

As indicated in the report and recommendation of the hearing committee, petitioner presented the

testimony of [A], M.D., the treating physician, and [B], M.D., both at [   ] State Hospital, [   ], Pa. The doctors testified that petitioner's mental disease was diagnosed as paranoid-schizophrenia and that his prognosis of remaining stable was dependent on his required medication.

Since petitioner's discharge from the hospital in April, 1978, he has been receiving his medication and periodic out-patient treatment through the Community Mental Health Center of the [   ] Hospital. The doctors believe that when the symptoms of petitioner's disease are not in remission, he is not capable of handling his own affairs or the affairs of others and, therefore, not capable of practicing law. While the professional opinions of Dr. [A] and Dr. [B] agree that petitioner is currently mentally able to resume the practice of law, it must be brought to the court's attention that petitioner's illness has caused him to be hospitalized approximately seven times in the past 17 years. The report also recognizes that should petitioner discontinue his daily medication, there is a 90 percent chance that he will again become psychotic.

It must be noted the petitioner has developed a pattern of failing to take his medication at some point in time after being released from the various institutions. The court's attention is directed to the fact that petitioner has been suspended and reinstated prior to the instant suspension.

A reading of the notes of testimony of [respondent] is particularly disturbing. When queried: "How do you perceive what problem, if any, you have"?

"A.  Well, the only thing I can tell you is that the problem seems to have resulted when I have had marital difficulties and this time with the wife I am

divorcing. It has resulted, this time, in the loss of employment, at least it was a factor in it.

Before I went into the [   ] State Hospital, I also had an abdominal problem. I had a ruptured colon. That, plus the separation, plus losing my job and the physical problem sort of resulted in the roof caving in. I don't know how you would describe that medically though.

Q. Well, I am not really asking you for a medical definition, but how you would perceive what it is that you have. Apparently, isn't it true that for the past 17 years, you have had sporadic difficulties with your mental health and have been committed a number of times? Is that true?

A. Well, I haven't been committed a number of times. Each time the wife was a factor. I was committed to [   ] in 1973; the separation with the wife, again, here in [   ], but there was no proceeding taken on account of that. I was in there for a month. Again, the wife had signed a petition on that. I was in there for a month. This last time, probably through concern over the children and my wife, the thing happened again. But I wouldn't say a number of times.

Q. Were you ever in the [   ] State Hospital in [   ]?

A. Yes.

Q. When was that, approximately?

A. I don't—

Q. 1971.

A. It was back further than that. That was before I passed the bar examination.

Q. Was that a commitment, or did you voluntarily seek help?

A. It wasn't a court commitment, no.

Q. Did that have to do with a mental problem?

A. I suppose so. I think, as I recall, I had a problem because I was unable to find employment.

Q. Were you ever in the [   ] General Hospital in [   ]?

A. Yes.

Q. Can you tell us when that was, approximately?

A. I would say it was probably around 1968. I am not certain.

Q. That again, had to do with a mental difficulty you were having?

A. Well, I suppose so. I believe the wife signed me in at that time.

Q. Referring to the 1973 commitment to the [   ] State Psychiatric Hospital—what I would like to do is get those dates on the record—wasn't it true that you were involuntarily committed on June 11, 1973?

A. It is true.

Q. That was a 60-day commitment; do you recall?

A. I believe so."

It therefore, appears that [respondent] is not aware of his mental condition but places his illness on other factors such as, divorce proceedings with his wife (his third) and his inability to find employment. He also appears uncertain about the medication he is receiving. The court's attention is directed to the following exchange:

"Q. At the time you were discharged from the [   ] State Psychiatric Hospital, were you on any medication.

A. I don't recall. I know that they were giving me medicine at the Hospital. I also know that they changed that around quite a bit. In other words, the medicine that I was taking was not the same at all times. I am not sure just exactly what—

Q. I am not going to ask you what type of medica-

tion you were on. Were you supposed to take some sort of medication for your mental illness?

A. Was I supposed to take medication after I was released from the hospital? Yes. I don't know. I suppose so. I don't know for sure that I can say that I remember them insisting that I take neducube after I left the hospital.

Q. Up until at least the time you were reinstated to active practice, however, you were going to an outpatient clinic for psychiatric counseling; isn't that true?

A. I think that I went once or twice. That was all. They were trying out a new drug, and they wanted me to participate. I didn't continue that. I didn't have to, and I didn't continue with that.

Q. When you say, "I didn't have to," what do you mean you didn't have to? You didn't have to participate in the program or you didn't have to take medication?

A. I didn't have to participate in the program.

Q. Was it recommended that you continue on some medication to keep your symptoms in remission?

A. To tell you the truth, I really don't think so. I really don't think so."

And under further questioning, the court's attention is directed to the following:

"Q. When you were discharged from the [ ] Hospital back in September, 1974, were you told to take medication on a daily basis?

A. Yes, I was taking medication.

Q. How long did you continue with that medication?

A. Until the doctor and I decided that it wasn't necessary for me to take it any longer.

Q. Could you give us an estimate of when that may have been?

A. Six months to a year, I think. I would say about a year."

It has been this writer's experience with clients who have been diagnosed as psychotic that those who recognize their illness and fully understand that unless they remain on medication, they will be returned to the hospital have more successful remissions. I therefore have a great deal of reservation about the ability of this petitioner to function in a law practice without supervision.

On the basis of the record, we agree that petitioner has demonstrated his competency and learning in the law. However, it is the opinion of the board that the guidelines* set forth in the report of the hearing committee are insufficient to monitor the work of petitioner. In view of his inability to recognize the importance of strict adherence to the medication program, it is the board's belief that petitioner's treating physician shall make frequent reports.

Since petitioner has held nine different jobs in nine years, it is felt that he should not be reinstated at this time. It should be noted that in Rohl v. Texas, 1978,[1] the attorney was limited to areas of less stressful matters by agreement. It would seem wiser in view of our responsibility to the public that petitioner reapply in a year's time and that he be ordered to undergo examination by an independent impartial medical expert.

---

*Editor's note: See Editor's Appendix, infra.

1. Bar Leader, July-August 1979, p. 18, Mental Disability and the Right to Practice Law, Daniel L. Skoler.

## 3. RECOMMENDATION

The Disciplinary Board respectfully recommends to you honorable court that the petition for reinstatement of [respondent] be denied.

## ORDER

EAGEN, *C.J.*, And now, October 5, 1979, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated September 24, 1979, is accepted and approved; and it is ordered, that the petition for reinstatement of [respondent], is denied.

## EDITOR'S APPENDIX

The following is an extract from the report of the hearing committee.

## III. CONCLUSIONS OF LAW
### (Hearing Committee)

• • •

4. Considering the totality of the facts and circumstances presented, the petitioner has shown that his disability has been removed and that he is fit to resume the practice of law; however, in the interests of protecting the public from the threat posed by the cyclic nature of petitioner's mental illness, his reinstatement to the active roll of attorneys should be conditioned upon the following:

(a) That petitioner continue to take whatever medications are currently being prescribed and may be in the future prescribed for him by his physician for the control of his mental illness;

(b) That petitioner continue to undergo periodic

psychiatric counseling under the care of a qualified psychiatrist, such as Dr. [ ];

(c) That petitioner arrange for his treating psychiatrist to submit reports to the Disciplinary Board of the Supreme Court of Pennsylvania concerning petitioner's current state of mental health at least semi-annually (on June 1st and December 31st of each year);

(d) That petitioner agree to have his treating psychiatrist notify the Disciplinary Board immediately upon any substantial change in petitioner's mental condition;

(e) That petitioner agree to practice law subject only to peer supervision and that his supervisor (attorney) as a condition to employment, agree .to submit reports to the Disciplinary Board of the Supreme Court of Pennsylvania concerning petitioner's current employment status at least annually (by December 31st of each year) unless waived by the board;

(f) That petitioner agree to report to the Disciplinary Board of the Supreme Court of Pennsylvania any change of employment within ten days from the date of such change; and

(g) That petitioner's failure to meet any of the above conditions or receipt of a report from petitioner's psychiatrist indicating that petitioner's current mental condition precludes him from competently performing those duties and functions required of an active attorney, or failure by the board to receive a report from petitioner's current employer evidencing petitioner's current employment status will result in petitioner's being summarily transferred to inactive status.

It is submitted that the above conditions impose

little burden upon the petitioner while protecting his own interests as well as the interest of the public. If the hearing committee is not authorized to impose these conditions, it does not recommend petitioner's reinstatement to the active role of attorneys.